UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER R. GEYER,

    Plaintiff,

v.                                                    Case No:   2:18-cv-227-FtM-UAM

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Christopher R. Geyer, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed applications for a period of disability and disability insurance benefits as well as Supplemental Security Income on March 14, 2011, alleging a disability onset date of September 4, 2005. (Tr. 309-10, 529). Plaintiff's applications were denied initially on May 19, 2011, and upon reconsideration on July 5, 2011. (Tr 369, 374). On June 7, 2013, Administrative Law Judge ("ALJ") Joseph L. Brinkley issued a decision finding Plaintiff not disabled under the Social Security Act. (Tr. 311-30). Plaintiff requested review of the decision and, on September 4, 2014, the Appeals Council remanded the case instructing the ALJ to perform a new hearing and to issue a new decision. (Tr. 331-34).

On July 13, 2015, ALJ Maria C. Northington issued a new decision, finding the Plaintiff not disabled under the Social Security Act. (Tr. 336-64). On April 6, 2016, the Appeals Council once again remanded the case instructing the ALJ to conduct a new hearing and to issue a new decision. (Tr. 365-68).

On November 2, 2016, ALJ Northington conducted a new hearing. (Tr. 75). On May 23, 2017, the ALJ issued a new decision finding the Plaintiff not disabled under the Social Security Act. (Tr. 13, 34). On February 15, 2018, the Appeals Council denied the Plaintiff's request for review. (Tr. 1). Plaintiff initiated this action by Complaint (Doc. 1) on April 6, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of March 14, 2011. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairment: left hip mild to moderate degenerative arthritis with valgus angulation status post multiple screw fixations to include the left lower extremity and anxiety with obsessive compulsive disorder. (Tr. 20). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as follows. "Sedentary" work involves sitting for approximately six hours in an eight hour day, lifting no more than 10 pounds and occasionally lifting and/or carrying articles such as docket files, ledgers, and small tools. A certain amount of walking and/or standing is often necessary to carry out job duties (20 CFR 404.1567 and Social Security Ruling 83-10). The claimant is limited to sitting for six hours in an in an eight-hour workday. He is capable of standing and/or walking for up to TWO hours in an eight-hour workday. In the course of work, he should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause him to be off-task or leave workstation. He retains the capacity to perform occasional postural functions of climbing ramps and stairs, kneeling bending and stooping. He is to perform no crawling, no crouching and no climbing of ladders, ropes and scaffolds. He is able to operate foot pedals frequently with the left lower extremity the right lower extremity is not affected. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous moving machinery that may cause harm to self or others. Secondary to mild allergic rhinitis, individual is to avoid concentrated exposure to respiratory irritants such as fumes, odors, smoke, gases and poor ventilation. He is to avoid concentrated exposure to extremes of heat, humidity and cold temperatures. Secondary to mild anxiety and depression, the claimant retains the capacity to understand, remember and carry-out greater than

> simple but less than highly complex tasks and instructions. He is able to make judgments regarding work-related decisions and manage routine job stressors. He is able to maintain a routine work schedule and handle changes in non-highly complex job environments. He is able to respond appropriately to public, supervisors, coworkers and work situations. He is able to respond appropriately to the public. He is able to complete detailed instructions.

(Tr. 23). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a library assistant, insurance sales agent, and adjunct instructor. (Tr. 32).

At step five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 33). Specifically, the ALJ found that Plaintiff could perform such jobs, using transferable skills, such as tax preparer and data entry clerk. (Tr. 33). Further, the ALJ found that if Plaintiff was limited to unskilled work not requiring transferable skills, Plaintiff could perform such jobs as addresser, document preparer/scanning documents, and telephone order clerk. (Tr. 33). The ALJ concluded that Plaintiff was not under a disability from March 14, 2011, the amended alleged onset date, through May 23, 2017, the date of the decision. (Tr. 34).

**II.    Analysis**

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to properly consider the opinion of medical expert Dr. Carver; (2) whether the ALJ erred by failing to properly consider the side effects of Plaintiff's medication; (3) whether the ALJ erred by formulating a vague sit/stand option that is inconsistent with his other RFC findings; and (4) whether the ALJ erred by relying on VE testimony concerning jobs numbers that is not supported by substantial evidence. The Court will address each issue in turn.

**(a) Whether the ALJ erred by failing to properly consider the opinion of medical expert Dr. Carver.**

Plaintiff argues that substantial evidence does not support the ALJ's decision because the ALJ accorded "significant weight" to the opinion of medical expert Dr. Carver but failed to include all of Dr. Carver's limitation findings or otherwise explain why she did not include Dr. Carver's limitations into the hypothetical question to the VE and into the RFC assessment. (Doc. 20 p. 10-11). Specifically, Plaintiff notes that the ALJ did not include Dr. Carver's off task limitations or restrictions on working with fast moving equipment, fast moving mechanical devices, assembly line work, or work where there is a time factor. (Doc. 20 p. 11). Plaintiff argues that the ALJ's error was material to the outcome of the case as the VE testified at the hearing that being off task 10 or 15 percent of an 8-hour workday would preclude work. (Doc. 20 p. 11).

In response, Defendant argues that while the ALJ accorded Dr. Carver's opinion "significant weight," the ALJ was not required to adopt the opinion verbatim. (Doc. 20 p. 11). Defendant argues that the ALJ implicitly rejected those portions of Dr. Carver's opinion that would support a finding that Plaintiff had functional limitations preventing him from working around fast-moving equipment or performing assembly line work. (Doc. 20 p. 11).

At the administrative hearing, medical expert and clinical psychologist, Joseph Carver, Ph.D., testified that the Plaintiff has moderate limitations in the area of concentration, persistence, and pace due to anxiety, chronic pain, and side effects of medications. (Tr. 103). Dr. Carver further elaborated that this limitation would warrant a restriction of the Plaintiff from being around fast moving equipment, fast moving mechanical devices, assembly line work, or work where there is a time factor. (Tr. 104). Dr. Carver further testified that the Plaintiff would not be off task if he had to perform work in academic setting, but he would be off task 10 to 15 percent if he had to

perform work that is "prone to error" when the Plaintiff's attention waxes and wanes such as dealing with inventory. (Tr. 105-06).

In her decision, the ALJ explained the weight she accorded to the opinion of Dr. Carver as follows:

> The competent hearing testimony of medical expert Dr. Carver, clinical psychologist, is given significant weight due to his expertise, his familiarity with the Social Security regulations and the consistency of his testimony with the longitudinal medical history, objective medical findings and other treating and examining opinions contained in the record. Significant weight is especially given to Dr. Carver's opinion that Ms. Needham's opinions are outside the scope of her child psychological license and inconsistent with the record.

(Tr. 31).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can

still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). In order for a VE's testimony to constitute substantial evidence to support the ALJ's decision, the ALJ must pose a hypothetical question to the VE that comprises all of the claimant's limitations. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

In this case, the Court finds that remand is not appropriate for the ALJ's failure to adopt all of Dr. Carver's limitation findings and failure to explain why certain limitations were not included. While the ALJ did not discuss every aspect of Dr. Carver's opinion, the ALJ explained at length in her decision why she found at the second and third steps of the Commissioner's sequential evaluation that Plaintiff had only mild to moderate limitation in the area of concentrating, persisting, or maintaining pace and discussed the ample evidence demonstrating that Plaintiff did not have additional work-related mental limitations as a result of that finding. (Tr. 22, 26-32). Thus, the ALJ implicitly rejected those portions of Dr. Carver's opinion that would support a finding that Plaintiff had functional limitations preventing him from working around fast-moving equipment or performing assembly line work. (Tr. 22, 26-32, 104).

Furthermore, as Defendant notes, Plaintiff has not even alleged that, had the ALJ found that Plaintiff had functional limitations preventing him from working around fast-moving equipment or performing assembly line work, these limitations would have prevented him from performing the representative jobs that the VE cited and that the ALJ found he could perform. The ALJ found, based on the VE's testimony, that Plaintiff was capable of performing semi-skilled work as a tax preparer or data entry clerk (Tr. 33, 137-41). The ALJ further found that, if Plaintiff were limited to unskilled work, there would still be jobs in the national economy that

Plaintiff could perform, such as addresser, document preparer, and telephone order clerk (Tr. 33, 137-41). Plaintiff has not met his burden of demonstrating that he could not perform any of these jobs if he had the additional mental limitations that he alleges.

> **(b) Whether the ALJ erred by failing to properly consider the side effects of Plaintiff's medication.**

Plaintiff argues that despite credible evidence indicating that Plaintiff suffers from disabling side effects of medications, the ALJ failed to assess and weigh the side effects of Plaintiff's medication. (Doc. 20 p. 15). Further, Plaintiff argues that his testimony, the opinion of treating physician Karen Pham, M.D., and the testimony of medical expert Ronald Kendrick, M.D., support the finding that Plaintiff's side effects cause disabling limitations. (Doc. 20 p. 14-15). In response, Defendant argues that the ALJ properly considered the evidence relating to Plaintiff's limitations in concentration and that the ALJ properly considered the opinions of Dr. Pham and Dr. Kendrick. (Doc. 20 p. 15-17).

The record shows that Plaintiff testified that Cyclobenzaprine, the muscle relaxer, and Hydrocodone affect his ability to drive. (Tr. 90). He further testified that muscle relaxers make him sleepy. (Tr. 90). The record shows that Plaintiff was prescribed Cyclobenzaprine, the generic name for Flexeril, by Dr. Pham. (Tr. See e.g., 1534, 1550, 1561, 1585, 1615, 1620). Dr. Pham indicated in one of her opinion statements that medications the Plaintiff takes for his pain sometimes interfere with concentration. (Tr. 1386, 1404). Dr. Pham opined that Plaintiff's ability to concentrate is limited to 2/3 of a workday. (Tr. 1386, 1404).

At the hearing, medical expert, Dr. Kendrick, testified that Plaintiff's testimony regarding medication side effects was consistent with the types of medication that the Plaintiff is being prescribed. (Tr. 31, 123). He testified that Flexeril is particularly very sedating. (Tr. 123). He testified that most of his patients discontinued this medication because they would rather deal

with pain than drowsiness. (Tr. 123-24). He stated that if the Plaintiff had to take medication to control muscle spasms, he would "probably have to rest and not be able to really contend with whatever work he's doing at the time." (Tr. 124). While Dr. Kendrick testified that Plaintiff does not have to take Flexeril, the record indicates that this medication was prescribed to the Plaintiff. (Tr. See e.g., 1534, 1550, 1561, 1585, 1615, 1620).

When evaluating the intensity and persistence of a claimant's alleged symptoms, the Social Security regulations direct the ALJ to consider the claimant's alleged medication side effects. 20 C.F.R. § 404.1529(c)(3)(iv) (noting that factors relevant to a claimant's alleged symptoms include the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"); 20 C.F.R. § 416.929(c)(3)(iv). "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *McDevitt v. Comm'r of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007).

In this case, although the ALJ did not directly consider the side effects of Plaintiff's medication on his ability to concentrate, the ALJ's decision shows that she considered Plaintiff's allegations of debilitating deficiencies in concentration whatever the source. As Defendant notes, Plaintiff's allegation of disabling concentration difficulties is supported only by his own testimony and the opinion of Dr. Pham. The ALJ, however, explained his reasoning for rejecting Dr. Pham's findings, i.e., her opinion was inconsistent with and unsupported by objective medical evidence, including Dr. Pham's own treatment records. (Tr. 30, 1385-86, 1403-04). Indeed, Dr. Pham's treatment notes are devoid of complaints of debilitating concentration difficulties and consistently note that Plaintiff did not complain of fatigue and had normal memory on examination. (Tr. 1251-1306, 1411-46, 1464-1572, 1580-1626). Thus, the ALJ was

not required to credit Dr. Pham's unsupported opinion that Plaintiff's ability to concentrate was limited to 2/3 of a workday. (Tr. 1386, 1404).

Further, there is no inconsistency between the ALJ's determination that Dr. Kendrick's opinion was entitled to "significant weight" and the ALJ's rejection of Dr. Pham's opinion. Dr. Kendrick did not testify that Plaintiff's medications caused Plaintiff to experience disabling drowsiness or concentration difficulties, but instead testified that drowsiness is a known side effect of one of the medications that Plaintiff was prescribed and that he would "probably" need to rest for some unknown length of time if he took the medication, although Plaintiff did not need to take that particular medication. (Tr. 123-25). Dr. Kendrick did not disagree with Dr. Pham that Plaintiff might need to alternate sitting and standing but that he did not think that it would require 20 minutes to accomplish a change in position or that there was any scientific basis for Dr. Pham's opinion as to the frequency. (Tr. 125-26). Dr. Kendrick did not endorse Dr. Pham's opinions, nor did he testify that he found any support in the record for Plaintiff's allegations of disabling medication side effects. (Tr. 123-26, 129-31).

Plaintiff has failed to demonstrate that his alleged side effects cause him to be more limited than determined by the ALJ. While the ALJ did not directly address Plaintiff's side effects, her decision shows that she considered and weighed the opinion evidence of physicians that considered Plaintiff's side effects. Thus, the Court finds no error warranting remand for the ALJ to address on a remand.

**(c) Whether the ALJ erred by formulating a vague sit/stand option that is inconsistent with his other RFC findings.**

Plaintiff argues that the ALJ's finding that Plaintiff must alternate "between sitting and standing about every 30 to 60 minutes" is vague and inconsistent the ALJ's limitation of Plaintiff to sedentary work. (Doc. 20 p. 17). Plaintiff contends that if the ALJ meant that after 30-60

minutes of sitting, the Plaintiff must stand for 30-60 minutes, this would add up to 3 to 5 hours of sitting and 3 to 5 hours of standing in an 8-hour workday.  Plaintiff argues that this finding conflicts with the ALJ's determination that Plaintiff was limited to standing and/or walking for two hours in an 8-hour workday. (Doc. 20 p. 17).  In response, Defendant argues that Plaintiff's interpretation of the sit/stand option strains to create an inconsistency where there is none.

Here, reviewing the ALJ's sit/stand option in the context of her RFC assessment, it is clear the ALJ found that Plaintiff will spend most of his time sitting and, about once every 30 to 60 minutes, Plaintiff will be permitted, if he so chooses, to stand up for whatever amount of time he deems necessary to relieve pain before returning to a seated position. (Tr. 23, 137-38).  At the administrative hearing, neither the VE nor Plaintiff's attorney expressed any confusion as to what the ALJ meant, and the VE testified that all of the jobs he identified could be performed sitting or standing, per the prerogative of the worker. (Tr. 137-48).

There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)).  Remanding this case for the ALJ to clarify her sit/stand option would be such an empty exercise.

### (d) Whether the ALJ erred by relying on VE testimony concerning jobs numbers that is not supported by substantial evidence.

Plaintiff argues that the VE testimony did not provide substantial evidence to support the ALJ's decision because the VE based his testimony regarding the job numbers solely on the commercial software of which the Commissioner does not take administrative notice. (Doc. 20 p. 19).  Specifically, Plaintiff contends the VE based his job numbers on Job Browser Pro by

SkillTRAN and did not endorse these numbers based on his own experience. (Doc. 20 p. 21). In response, Defendant argues that the ALJ did not exclusively rely on Job Browser Pro, but that it was only one source consulted in determining job numbers, the other source being the United States Bureau of Labor Statistics. (Doc. 20 p. 21).

In recent years several cases have addressed the issue of whether an ALJ may rely on the testimony of a VE who derived job numbers data from computer software such as Job Browser Pro. Some courts have found that a VE's exclusive reliance on software program without any testimony or evidence that the VE could endorse those numbers based on his or her personal knowledge and expertise rendered the testimony unreliable. *See Thompson v. Comm'r of Soc. Sec.*, 2016 WL 1008444, at \*6 (M.D. Fla. Mar. 15, 2016). Other courts have affirmed the ALJ's reliance on the VE testimony when the VE relied on the software. *See Middleton v. Comm'r of Soc. Sec.*, 2018 WL 1371246, at \*7 (M.D. Fla. Feb. 7, 2018) (collecting cases). In the joint memorandum, neither party cited to binding law on the issue.

Here, upon review of the record and the facts particular to this case, the Court finds that the VE's reliance on Job Browser Pro does not warrant remand. First, the VE testified that his "first and foremost" job number reference source was the United States Bureau of Labor Statistics. Second, Plaintiff has failed to provide any evidence demonstrating that the VE's numbers were flawed or would have differed or been reduced below the significant number threshold. The VE testified that Plaintiff was capable of performing the job requirements of five jobs, totaling over 570,000 jobs in the national economy. Even if these jobs numbers were reduced 99%, the number would still constitute a significant number in the national economy. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished) (finding that 840 jobs constituted a significant number in the national economy to support an

ALJ's step five determination). Accordingly, the Court finds remand would be inappropriate because the ALJ relied on VE testimony that was based, in part, on Job Browser Pro as a source of job numbers.

**III.     Conclusion**

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 3, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties